# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GEICO CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-00197-DGK |
| | ) |
| PATRICIA HOLLANDSWORTH and | ) |
| RICHARD AGUILAR, | ) |
| | ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This declaratory judgment action concerns insurance coverage for an automobile accident. Plaintiff GEICO Casualty Company ("GEICO") seeks a declaration that the policy it issued to Daniel and Deborah Clymens does not cover an accident between Defendants Patricia Hollandsworth and Richard Aguilar. Hollandsworth was driving a U-Haul truck rented by Daniel Clymens when it hit a motorcycle ridden by Aguilar, leaving Aguilar severely injured. Now before the Court is Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 17). Defendants argue that the amount in controversy does not exceed the jurisdictional threshold of $75,000 because the policy limits are $25,000 per person and $50,000 per occurrence. The Court DENIES this motion because the amount in dispute includes the policy limits plus the potential cost of defense, which, combined, could exceed $75,000.

### Background

GEICO issued an insurance policy to Daniel and Deborah Clymens for a 2005 Toyota Sienna XLE. The policy has an "each person" bodily injury liability limit of $25,000 and an "each occurrence" bodily injury liability limit of $50,000. The policy extends coverage to relatives of the named insureds who reside in the insureds' household and, under certain circumstances, to

insureds operating non-owned autos. It also obligates GEICO to defend the insured in any suit for damages payable under the policy.

On July 14, 2013, Daniel Clymens rented a Ford E450 U-Haul truck.[1] The next day, Hollandsworth drove the U-Haul truck[2] while intoxicated and hit Aguilar as he was riding his motorcycle, severely injuring him. His injuries led to the amputation of his right arm and lower-left leg. He also suffered a left-arm fracture, multiple rib fractures, and a closed-head injury causing cognitive deficits. Aguilar sued Hollandsworth in Missouri state court on August 25, 2017, alleging damages including medical expenses, lost income, pain and suffering, costs, and interest. Hollandsworth sought indemnification from GEICO under the Clymens' policy. On February 2, 2018, GEICO faxed Hollandsworth a letter denying coverage and offering to defend her subject to a reservation of rights.

On February 15, unbeknownst to GEICO, Hollandsworth entered into an agreement with Aguilar pursuant to Mo. Rev. Stat. § 537.065 ("the 537 Agreement"). In the 537 Agreement, Hollandsworth acknowledged fault for causing the accident, agreed not to dispute liability, and agreed to submit the issue of damages "to a judge." 537 Agmt. ¶ 1 (Doc. 31-1). She also agreed to pursue all claims against GEICO

> for extra-contractual damages or bad faith and/or for [GEICO's] failure to settle and/or for negligence or breach of fiduciary duty (or however the claim may be denominated) arising out of [GEICO's] failure to earlier settle the claim brought against her.

*Id*. ¶ 3. Hollandsworth further stated that she would "fully cooperate in any claim or cause of action" against GEICO, including being named as a party plaintiff, and she assigned to Aguilar

---

[1] The insurer for U-Haul, Rep West, also declined to provide coverage. Although its name arises in various documents in this case, its actions are not relevant to the pending motion.

[2] The record is silent as to how Hollandsworth, who did not have a valid driver's license, came to be driving the U-Haul. Defendants allege that she was a permissive driver.

2

"all interests, causes of action, and rights of action" against GEICO. *Id*. ¶¶ 4-5. In exchange, Aguilar agreed to limit his recovery to the proceeds of any applicable insurance policies and to not execute any judgment upon Hollandsworth's personal assets. *Id*. ¶ 5.

On February 22, Hollandsworth informed GEICO that she was rejecting GEICO's defense under a reservation of rights. She also requested that counsel retained by GEICO withdraw from her defense. The next day, GEICO replied that it was considering whether to withdraw its reservation of rights and defend her unconditionally. On February 28, Hollandsworth notified GEICO that she had not been advised of GEICO's position. She gave GEICO until 5:00 p.m. that evening to withdraw its reservation of rights. GEICO chose not to do so.

On March 3, Hollandsworth informed GEICO of the 537 Agreement. Shortly thereafter, on March 7, GEICO moved to intervene as a matter of right in the state court lawsuit. On March 15, at 1:13 p.m., Aguilar dismissed without prejudice his state-court action against Hollandsworth. One hour and ten minutes later, GEICO filed this federal action seeking a declaratory judgment that it owed no duty to indemnify or defend Hollandsworth for the July 14, 2013, accident.

On March 28 and April 2, Aguilar and Hollandsworth filed separate motions to dismiss this case, arguing that the dismissal of the state-court action rendered the declaratory action moot. The Court denied the motion on July 23, holding that "Hollandsworth's demand for defense from GEICO in the dispute between her and Aguilar is enough to create an actual controversy and gives GEICO the right file a declaratory judgment action to determine whether coverage exists under the GEICO policy." Order at 4 (Doc. 14).

Defendants entered into an agreement on May 4 to submit their dispute to binding arbitration. As part of the agreement, Hollandsworth agreed not to accept representation at the arbitration from any attorney or firm selected by GEICO, or to "file any post-arbitration motions challenging the award, any post-trial motions after the court enters judgment, or any notice of

3

appeal." Arbitration Agmt. ¶¶ 20-21 (Doc. 21-3). The agreement reiterated that Aguilar would seek to recover only from the GEICO policy proceeds and any potential claim against GEICO, including GEICO's "failure to defend or indemnify Hollandsworth." *Id.* ¶ 21. Hollandsworth also reaffirmed that she would "pursue all potential claims against her insurance companies including claims for the insurance companies' failure to defend her, failing to settle her case and failure to indemnify her." *Id.* ¶ 25.

The arbitrator heard evidence on June 4, and, on July 16, issued his decision awarding Aguilar approximately $8 million in economic damages, $20 million in non-economic damages, and $7 million in punitive damages against Hollandsworth.[3] Aguilar filed an application in state court on August 8 to confirm the award. GEICO moved unsuccessfully to intervene in this proceeding, and, on October 24, the state court entered judgment confirming the $35 million award. GEICO appealed this decision, while Aguilar filed a separate state garnishment action against GEICO, alleging that GEICO acted in bad faith and breached its duty to defend. In that suit Aguilar seeks garnishment of the policy proceeds, as well as compensatory and punitive damages. Aguilar also states that GEICO's actions render it liable for the entire underlying judgment.

**Legal Standard**

Federal district courts have subject matter jurisdiction over all civil actions where the parties possess diversity of citizenship and "the matter in controversy exceeds . . . $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). These requirements must be satisfied at the

---

[3] The arbitration does not appear to have been particularly adversarial. For example, the arbitrator observed that Aguilar's life-care costs and future medical expenses did not reflect lesser amounts which Medicare, Medicaid, or a private insurance carrier would negotiate. "However, no evidence was presented to prove lesser amounts. Thus, the life care plan which was introduced at the hearing is the only evidence pertaining to the costs and expenses of his future needs and medical care." Arbitration Award at 11 (Doc. 21-1).

time of filing. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (citations omitted). The Court must dismiss the case if at any time it determines that it lacks jurisdiction. Fed. R. Civ. P. 12(h)(3).

"A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Scottsdale v. Universal Crop Prot. Alliance*, 620 F.3d 926, 931 (8th Cir. 2010) (quoting *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002)). Where a defendant challenges the amount in controversy, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Kopp*, 280 F.3d at 884-85). In other words, to survive dismissal, GEICO needs to prove "by a preponderance of the evidence that it [does] not appear to a legal certainty that the amount in controversy [is] less than what it alleged." *Id.* (citing *Kopp*, 280 F.3d at 885).

**Discussion**

The parties are completely diverse. The only question before the Court is whether the amount in controversy exceeds $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). GEICO claims that the case exceeds the jurisdictional threshold because it includes the policy limits, the potential cost of defending Hollandsworth, and any potential damages resulting from Defendants' 537 Agreement. Defendants argue that only the policy limits are in controversy because Hollandsworth refused GEICO's defense. Defendants also argue that the Court should not consider in controversy any asserted damages arising from their claims in the state garnishment proceeding, since these claims were not pending when GEICO filed this suit.

There is no dispute that in declaratory actions concerning insurance coverage for a particular occurrence, the maximum policy limit is included in "the amount in controversy if the value of the underlying claim exceeds the policy limit." *Schafer v. MacMillan*, No. 4:14-cv-1053-DGK, 2015 WL 4715247, at *4 (W.D. Mo. Aug. 7, 2015) (citing, among other cases, *Scottsdale*, 620 F.3d at 932). Such is the case here, and so the amount in controversy is at least $25,000, the per-person limit of the policy.

The parties contest whether GEICO's probable defense costs are also in controversy. Where an insurer sues an insured to determine its obligation to defend and indemnify, the amount in controversy includes the probable cost of defending the insured in the underlying litigation. *Scottsdale*, 620 F.3d at 932. Here, the underlying litigation is a personal-injury action involving a grievously injured plaintiff seeking millions of dollars in past and future medical expenses, non-economic damages, and punitive damages. The cost to defend against such claims is not cheap. Drawing from its experience reviewing fee requests and billing statements, the Court finds that GEICO's potential cost of defending the state-court action could have exceeded the jurisdictional threshold.

Defendants' assertion that defense costs were not in dispute when GEICO filed suit—because by that point Hollandsworth had rejected GEICO's defense and Aguilar had dismissed the state court action—is unavailing. At that time, Hollandsworth had made a demand on GEICO under the policy, GEICO's position was that it did not owe Hollandsworth indemnification or a defense, and Hollandsworth had not retreated from her position. Thus, the "lines were drawn, the parties were at odds, and the dispute was real." *Exec. Risk Indem., Inc. v. Asurion Prot. Servs., LLC*, No. 06-cv-00904-HFS, 2007 WL 1378376, at *2 (W.D. Mo. May 7, 2007) (citing *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992)). In fact, the parties are still litigating

whether GEICO owed Hollandsworth a defense.  And even though Aguilar dismissed the underlying case against Hollandsworth, the dismissal was without prejudice.  He could re-file his claims at any time.  Thus, the amount in dispute when GEICO filed this case includes not only the policy limits, but also the potential costs of defense.  Together, these could exceed $75,000.  The case therefore satisfies the amount-in-controversy requirement.[4]

## Conclusion

Between the policy limits and defense costs, the Court is convinced that "the value of the object of this litigation *could* exceed $75,000." *Encompass Ins. Co. v. Am. States Ins. Co.*, No. 5:12-cv-6059-SOW, 2012 WL 12903771, at *2 (W.D. Mo. Oct. 31, 2012).  Accordingly, Defendants' motion to dismiss (Doc. 17) is DENIED.

**IT IS SO ORDERED.**

Date: January 18, 2019 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

---

[4] Having so concluded, the Court need not decide whether to include in its consideration the potential damages Defendants seek in their equitable garnishment action against GEICO.  The Court nonetheless notes that these amounts would likely also establish jurisdiction.  Although Defendants had not brought the claims at the time of filing, they had already contracted to do so in their 537 Agreement.  They have since filed them, moreover, and subsequent events may be relevant "to prove the existence or nonexistence of diversity jurisdiction at the time of filing." *Scottsdale*, 620 F.3d at 931 (citing *Grinnell Mut. Reins Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997)).  This case therefore differs from those where potential claims were deemed wholly speculative. *See, e.g.*, *Unitrin Dir. Prop. & Cas. Co. v. Munar*, No. 4:12-cv-01043-GAF, 2013 WL 12146383, at *3 (W.D. Mo. Jan. 31, 2013) (holding that an insurer's allegation that fees may be at issue "nothing more than speculation").