# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GEICO CASUALTY COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:18-cv-00197-DGK |
| PATRICIA HOLLANDSWORTH and RICHARD AGUILAR, | ) |
| Defendants. | ) |

## **ORDER ABSTAINING AND DISMISSING CASE WITHOUT PREJUDICE**

This declaratory judgment action concerns insurance coverage for an automobile collision. Plaintiff GEICO Casualty Company ("GEICO") seeks a declaration that the policy it issued to Daniel and Deborah Clymens does not cover an accident involving a moving truck driven by Patricia Hollandsworth. Daniel Clymens helped Hollandsworth rent the truck, and while intoxicated she crashed it into a motorcycle ridden by Richard Aguilar. The Court now, on its own motion, exercises its discretion to abstain from hearing the suit and DISMISSES it in favor of a pending and parallel state proceeding.

## Background

A GEICO automobile policy insures Daniel and Deborah Clymens. The only vehicle listed on the policy is a 2005 Toyota Sienna XLE. The policy has an "each person" bodily injury liability limit of $25,000 and an "each occurrence" bodily injury liability limit of $50,000. The policy extends coverage to relatives of the named insureds who reside in the insureds' household and, under certain circumstances, to insureds operating non-owned autos. It also obligates GEICO to defend the insured in any suit for damages payable under the policy.

On July 13, 2013, Clymens and Hollandsworth rented a Ford E450 U-Haul truck so that Hollandsworth could move from the Clymens's to a new residence. The owner of the U-Haul refused to rent to Hollandsworth because she lacked a valid driver's license and was visibly intoxicated. Thus, Clymens alone signed the rental agreement. Hollandsworth, however, paid for the rental with her debit card. The next day, Hollandsworth drove the U-Haul truck while still intoxicated and hit Aguilar as he was riding his motorcycle, severely injuring him.

Aguilar sued Hollandsworth in state court in August 2017. Hollandsworth sought indemnification from GEICO under the Clymens's policy. GEICO denied coverage and offered to defend her subject to a reservation of rights. Hollandsworth rejected GEICO's defense and, unbeknownst to GEICO, entered into an agreement with Aguilar under Mo. Rev. Stat. § 537.065 (the "537 Agreement") (Doc. 31-1), whereby she assigned to Aguilar her rights under the GEICO policy and her claims against GEICO.

In the 537 Agreement, Hollandsworth acknowledged fault for causing the accident, agreed not to dispute liability, and agreed to submit the issue of damages "to a judge." She also agreed to pursue all claims against GEICO

> for extra-contractual damages or bad faith and/or for [GEICO's] failure to settle and/or for negligence or breach of fiduciary duty (or however the claim may be denominated) arising out of [GEICO's] failure to earlier settle the claim brought against her.

Hollandsworth further stated that she would "fully cooperate in any claim or cause of action" against GEICO, including being named as a party plaintiff. She assigned to Aguilar "all interests, causes of action, and rights of action" against GEICO. In exchange, Aguilar agreed to recover only from GEICO rather than from Hollandsworth's personal assets.

On February 22, Hollandsworth informed GEICO that she was rejecting its defense under a reservation of rights. She also requested that counsel retained by GEICO withdraw from her

2

case. The next day, GEICO replied that it was considering whether to withdraw its reservation of rights and defend her. On February 28, Hollandsworth notified GEICO that she had not been advised of GEICO's position. She gave GEICO until 5:00 p.m. that evening to withdraw its reservation and defend her unconditionally. GEICO chose not to do so.

Hollandsworth informed GEICO of the 537 Agreement on March 3. Shortly thereafter, on March 7, GEICO moved to intervene as a matter of right in the state court lawsuit. On March 15, Aguilar dismissed without prejudice his state court action against Hollandsworth. About one hour later, GEICO filed this federal action seeking a declaratory judgment that it owed no duty to defend or indemnify Hollandsworth with respect to the 2013 collision. Aguilar and Hollandsworth filed separate motions to dismiss this case, arguing that Aguilar's dismissal of the state court action rendered the declaratory action moot. The Court denied these motions (Doc. 14).

Defendants entered into an agreement (Doc. 21-3) on May 4 to submit their underlying dispute to binding arbitration. As part of the agreement, Hollandsworth agreed not to accept representation at the arbitration from any attorney or firm selected by GEICO, or to "file any post-arbitration motions challenging the award, any post-trial motions after the court enters judgment, or any notice of appeal." The agreement reiterated that Aguilar would seek to recover only from the GEICO policy proceeds and any potential claim against GEICO.

The arbitrator heard evidence on June 4, and, on July 16, issued his decision awarding Aguilar approximately $8 million in economic damages, $20 million in non-economic damages, and $7 million in punitive damages against Hollandsworth.[1] On August 8, Aguilar filed an

---

[1] The arbitration does not appear to have been particularly adversarial. For example, the arbitrator observed that Aguilar's life-care costs and future medical expenses did not reflect lesser amounts which Medicare, Medicaid, or a private insurance carrier would negotiate. "However, no evidence was presented to prove lesser amounts. Thus, the life care plan which was introduced at the hearing is the only evidence pertaining to the costs and expenses of his future needs and medical care." Arbitration Award at 11 (Doc. 21-1).

application in state court to confirm the $35 million award. GEICO moved unsuccessfully to intervene in this proceeding, and, on October 24, the state court entered the award. GEICO appealed this decision, while Aguilar filed a separate state garnishment action against the insurance company, alleging that GEICO acted in bad faith and breached its duty to defend. In that suit Aguilar seeks garnishment of the policy proceeds, as well as compensatory and punitive damages. He argues that GEICO's actions render it liable for the entire underlying judgment.

Defendants moved jointly to dismiss (Doc. 46) or stay (Doc. 64) this action. They requested that the Court abstain from hearing the case due to the pending state garnishment proceeding. The Court denied the motions (Doc. 74) because the parties had already conferred under Rule 16, taken several depositions, and fully briefed opposing motions for summary judgment. The Court now revisits its decision concerning abstention.

**Standard**

Federal courts ordinarily have a "virtually unflagging obligation" to exercise their jurisdiction. *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976). But the Declaratory Judgment Act, 28 U.S.C. § 2201, grants district courts "unique and substantial discretion in deciding whether to declare the rights of litigants" or to abstain in deference to a parallel state suit. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). This decision is guided by "considerations of judicial economy, considerations of practicality and wise judicial administration, and with attention to avoiding gratuitous interference with state proceedings." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013) (internal quotations and citations omitted).

"The key consideration . . . is 'to ascertain whether the issues in controversy between the parties to the federal action . . . can be better settled by the state court' in light of the 'scope and

4

nature of the pending state court proceeding.'" *Evanston Ins. Co. v. Jones*, 530 F.3d 710, 713 (8th Cir. 2008) (quoting *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000)). District courts must dismiss declaratory actions that a state court can better resolve, because "it would be uneconomical as well as vexatious" to proceed under such circumstances. *Haverfield*, 218 F.3d at 874-75 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

**Discussion**

The Court previously determined that this case and the state garnishment proceeding are parallel.[2] The Court now reevaluates whether the state is better positioned to settle the issues. *Cincinnati Indem. Co. v. A & K Const. Co.*, 542 F.3d 623, 625 (8th Cir. 2008) ("This court may raise the issue of the appropriateness of abstention sua sponte."). Upon further review of Missouri case law, the Court concludes that the state tribunal should resolve the matter. It reaches this result partly because of questions concerning how the Missouri Supreme Court would address the policy, *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (requiring federal courts in diversity cases to follow the state's highest court or, if that court has not decided an issue, to predict how it would rule), and partly because other factors further favor abstention.

With respect to non-owned autos such as the U-Haul,[3] the GEICO policy provides coverage for "[a] person or organization not owning or hiring the auto, regarding his or its liability because of acts or omissions of an insured," provided, however, that the insured was using the auto with the permission of its owner and within the scope of that permission. GEICO argues that this

---

[2] The suits are parallel because both involve the same three parties—GEICO, Hollandsworth, and Aguilar—and substantially the same issues. *See Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005). GEICO and Aguilar each seek a judicial determination of whether the GEICO policy covers Hollandsworth with respect to the 2013 collision.

[3] The GEICO policy defines a "non-owned auto" as "an automobile or trailer not owned by or furnished for the regular use of either [the Clymens] or a relative, other than a temporary substitute auto." The parties stipulate that the U-Haul satisfies this definition.

5

language covers only those held vicariously liable for the acts of an insured. GEICO emphasizes that Hollandsworth is liable not because Clymens rented the U-Haul, but because she drove it while intoxicated and collided with Aguilar. Defendants meanwhile urge the Court to adopt a more expansive reading of the policy. They claim Hollandsworth would not be liable had Daniel Clymens not rented the U-Haul and permitted her to drive it. Hence, Defendants in effect ask the Court to apply a "but for" analysis to find coverage.

The Missouri Supreme Court has not addressed this or any similar provision. The Missouri Court of Appeals has done so only twice, in cases that are not factually analogous. In *Noll v. Shelter Ins. Cos.*, the Court of Appeals held that nearly identical language covered the policyholder's son when he crashed a car lent to the policyholder by a friend.[4] 731 S.W.2d 393, 395 (Mo. Ct. App. 1987). And in *Weinberg v. Safeco Ins. Co. of Ill.*, the court determined that an effectively identical provision covered a student who crashed a van rented by the policyholder. 913 S.W.2d 59, 62 (Mo. Ct. App. 1995). Relying on *Noll*, the *Weinberg* court found the disputed provision "enigmatic" and reasoned that if the insurer had intended to "engraft[] the concept of actual negligence by a named insured," it should have done so explicitly. *Id.* and n.1.

It is unclear whether *Weinberg* and *Noll* are determinative. *See Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) ("Decisions of intermediate state appellate courts are persuasive authority that we follow when they are the best evidence of what state law is."). For one, neither case provided much analysis of the policy language at issue. And in both the owner of the auto had consented to it being driven by the potential insured. *Noll*, 731 S.W.2d at 395; *Weinberg*, 913 S.W.2d at 60. Here, by contrast, the owner expressly prohibited

---

[4] Unlike the GEICO policy, the policy in *Noll* did not the insured's relatives with respect to non-owned autos. *Noll*, 731 S.W.3d at 395.

Hollandsworth from driving the U-Haul.[5]  This fact seemingly bears on whether Clymens, in turning the U-Haul over to her, was "using" it within the scope of its owner's permission.

To be sure, the Missouri Supreme Court has interpreted "use" broadly.  *See, e.g.*, *Royal Indem. Co. v. Shull*, 665 S.W.2d 345, 347 (Mo. 1984); *Griffits v. Old Rep. Ins. Co.*, 550 S.W.3d 474, 479 (Mo. 2018).  But it has done so almost exclusively in the context of omnibus clauses.  *Id.* ("*[I]n the context of an omnibus insurance clause*, the term 'use' is much broader in scope and application than the term 'operate.'" (emphasis added)); *see also Farm Bureau Mut. Ins. Co. v. Broadie*, 558 S.W.2d 751, 754 (Mo. Ct. App. 2001) ("*[A]s employed in an omnibus clause* 'use' is a term of much broader scope and application than 'operate' or 'drive' . . . ." (emphasis added)).  The Missouri Supreme Court has additionally suggested that restrictions on a rented vehicle's operation may bar coverage when made clear to the renter.  *Shull*, 665 S.W.2 at 348.

Moreover, the Court observes that myriad federal and state decisions bolster GEICO's position.  For example, in *Koch Asphalt Co. v. Farmers Ins. Co.*, a company partly responsible for a loading accident argued that it qualified as an insured under the same provision at issue here, since the accident would not have occurred but for the policyholder's negligence.  867 F.2d 1164, 1166 (8th Cir. 1989) (applying Minnesota law).  The Eighth Circuit disagreed, holding that the company had been sued for its own negligence, not that of the policyholder.  *Id.*; *see also, e.g.*, *Vulcan Mats. Co. v. Cas. Ins. Co.*, 723 F. Supp. 1263, 1265 (N.D. Ill. 1989) ("[The provision] is plainly a vicarious liability provision and nothing more."); *Canal Ins. Co. v. Earnshaw*, 629 F. Supp. 114, 120 (D. Kan. 1985) (holding that the provision did not provide coverage where the

---

[5] Hollandsworth states that the owner confirmed that she would not be driving the U-Haul because she was visibly intoxicated and lacked a valid driver's license.  The rental agreement also bars unlicensed divers from operating the vehicle, and U-Haul prepared an affidavit (Doc 45-8) stating that "Mr. Clymens was not authorized to give Ms. Hollandsworth permission to drive the Subject Vehicle and would have breached the Rental Agreement if he granted permission to Ms. Hollandsworth to drive [it]."

"defendant [is] sued for his own negligent acts and no claims of liability are based on the relationship between [the defendant and the policyholder]"); *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 292-93 (Fla. 2007) ("We hold that the phrase . . . covers only an additional insured's vicarious liability . . . .").

Courts reaching this conclusion have explained that a contrary interpretation could lead to unexpected results. That is, if a policy obligates an insurer to defend and indemnify anyone facing liability for acts enabled at least in part by some act or omission of the policyholder, then the insurer could have to defend and indemnify a wide array of individuals. *See Huber Eng'd Woods, LLC v. Canal Ins. Co.*, 700 S.E.2d 220, 221 (N.C. 2010); *Long Island Lighting Co. v. Hartford Acc. & Indem. Co.*, 350 N.Y.S.2d 967, 971-72 (N.Y. Sup. Ct. 1973); *see also Am. Hardware Mut. Ins. Co. v. Dairyland Ins. Co.*, 304 N.W.2d 687, 689-90 (N.D. 1981).

Under Defendants' reading of the policy, had Hollandsworth collided with the Clymens, GEICO would seemingly have had to indemnify and defend her against the policyholder. And had Hollandsworth been injured and asserted a claim against Aguilar, it appears possible that he too would have been covered. This strikes the Court as odd and unintended. *See J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973) ("The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention."); *Beister v. John Hancock Mut. Life Ins. Co.*, 356 F.2d 634, 640 (8th Cir. 1966) (noting that courts should construe insurance contracts so as to avoid unreasonable and absurd results).

In light of these issues, the Court concludes that the state tribunal should resolve the case, especially since other factors favor abstention as well. As previously noted, Missouri insurance law governs this case, and there are no federal claims or defenses. There also exists a slight risk of inconsistent judgments. In addition, the state garnishment action is broader in scope, given the

bad faith claims not present here. *See Seneca Spec. Ins. Co. v. Garcia Empire, LLC*, No. 2:17-cv-04119-NKL, 2018 WL 1005406, at *3 (W.D. Mo. Feb. 21, 2018) (observing that the federal declaratory action would fully resolve the matter only if the insurer prevails). And although the parties have completed substantial briefing in this suit, they can use their work in the state proceeding. *See Great Am. All. Ins. Co. v. Stutes*, No. 2:17-cv-04035-NKL, 2018 WL 1787307, at *3 (W.D. Mo. Apr. 13, 2018).

## Conclusion

The state court is better positioned to settle the issues and, accordingly, this Court declines to exercise its jurisdiction. A stay rather than dismissal is typically the preferred mode of abstention. *Seneca*, 2018 WL 1005406, at *3 (citation omitted). But dismissal is appropriate where there is "'no reason for the case to return to federal court.'" *Id.* (quoting *Haverfield*, 218 F.3d at 875 n.2). The Court does not anticipate this case returning. It is therefore DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date: <u>March 28, 2019</u>                             /s/ Greg Kays
                                                                                   GREG KAYS, JUDGE
                                                                                    UNITED STATES DISTRICT COURT